No. 15-1770

# In the United States Court of Appeals for the Seventh Circuit

―――――――――

UNITED STATES OF AMERICA,
PETITIONER-APPELLEE

V.

RAUL VIVAS-CEJA,
RESPONDENT-APPELLANT

―――――――――

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN,
CASE NO. 3:14-CR-55
THE HONORABLE WILLIAM M. CONLEY

―――――――――

PETITION FOR REHEARING EN BANC

―――――――――

JOHN W. VAUDREUIL
   United States Attorney
   Western District of Wisconsin

PETER M. JAROSZ
   Assistant United States Attorney
   Western District of Wisconsin

LESLIE R. CALDWELL
   Assistant Attorney General

SUNG-HEE SUH
   Deputy Assistant Attorney General

JOHN P. TADDEI
   Attorney, Appellate Section
   Criminal Division
   U.S. Department of Justice
   950 Pennsylvania Ave., NW
   Suite 1712
   Washington, DC 20530
   (202) 532-4475
   john.taddei@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................1

STATEMENT OF THE CASE.............................................................................2

REASONS FOR GRANTING THE PETITION............................................6

   A.  *Johnson* Did Not Render Section 16(b) Unconstitutionally Vague......................6

   B.  The Panel's Contrary Conclusion Warrants En Banc Review ...........................12

CONCLUSION ...................................................................................................15

CERTIFICATE OF SERVICE...............................................................................

CERTIFICATE OF COMPLIANCE.....................................................................

# TABLE OF AUTHORITIES

## CASES

*Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) ............................................................ 12, 13

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982) ....................... 10, 11

*Johnson v. United States*, 135 S. Ct. 2551 (2015) ..............................................................*passim*

*Lane v. Williams*, 455 U.S. 624 (1982) .............................................................................. 3, 4

*Leocal v. Ashcroft*, 543 U.S. 1 (2004) ................................................................................*passim*

*Maynard v. Cartwright*, 486 U.S. 356 (1988) .....................................................................10

*Smith v. Goguen*, 415 U.S. 566 (1974) ...............................................................................11

*Sykes v. United States*, 131 S. Ct. 2267 (2011) ...................................................................3

*United States v. Crawford*, No. 3:15CR70, 2016 WL 320116 (N.D. Ind. Jan. 27, 2016) ...............................................................................................................................14

*United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010) ....................................................3

*United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015) .......................................................14

*United States v. Green*, No. 15CR526, 2016 WL 277982 (D. Md. Jan. 22, 2016) ............15

*United States v. Jackson*, No. 3:15CR6, Op. & Order (N.D. Ind. Dec. 2, 2015)...............14

*United States v. National Dairy Products Corp.*, 372 U.S. 29 (1963) ......................................12

*United States v. Rogers*, No. 14CR234, Order (E.D. Wis. Jan. 12, 2016) ..........................15

*United States v. Serafin*, 562 F.3d 1105 (10th Cir. 2009) ....................................................9

## FEDERAL STATUTES, RULES, AND GUIDELINES

8 U.S.C. § 1101(a)(43)(F) ............................................................ 1, 13

8 U.S.C. § 1326 .............................................................................. 2

18 U.S.C. § 16(b) ....................................................................... *passim*

18 U.S.C. § 25 ............................................................................... 13

18 U.S.C. § 119 ............................................................................. 13

18 U.S.C. § 842(p)(2) ................................................................... 13

18 U.S.C. § 844(o) ....................................................................... 13

18 U.S.C. § 924(c)(3)(A) ............................................................. 14

18 U.S.C. § 924(c)(3)(B) ................................................... 13, 14, 15

18 U.S.C. § 924(e)(2)(B)(ii) ...................................................... 1, 3

18 U.S.C. § 929 ............................................................................. 13

18 U.S.C. § 931 ............................................................................. 13

18 U.S.C. § 1028(b)(3)(B) ........................................................... 13

18 U.S.C. § 1952 ........................................................................... 13

18 U.S.C. § 1959 ........................................................................... 13

18 U.S.C. § 2261 ........................................................................... 13

18 U.S.C. § 3142(f)(1)(A) ....................................................... 13, 15

18 U.S.C. § 3142(g)(1) ............................................................ 13, 15

18 U.S.C. § 3181 ........................................................................... 13

18 U.S.C. § 3663A(c)(1)(A) ......................................................... 13

18 U.S.C. § 5032 ................................................................................................. 13, 15

Fed. R. App. P. 35 ................................................................................................ 1, 6

U.S.S.G. § 2L1.2(b)(1)(C) ........................................................................................2

## MISCELLANEOUS

Federal Bureau of Prisons, Inmate Locator, *available at*:
    http://www.bop.gov/inmateloc/ ...................................................................3

R.I. Gen. Laws 1956, § 21-28-4.07.2(a) ...........................................................13

Utah Code Ann. § 76-9-802(5)(b)(i) .................................................................13

## INTRODUCTION

In this case, a panel of this Court held the definition of the term "crime of violence" in 18 U.S.C. § 16(b) unconstitutionally vague on its face. That decision is incorrect. It invalidates a widely-applied federal statute that has been in place since 1984 and will cause substantial disruption to the enforcement of federal criminal laws in this Circuit. Section 16(b) or comparable language is used in more than a dozen statutes that define federal crimes, fix sentencing ranges of federal offenses, and address important matters of federal criminal procedure. En banc review is warranted to correct the panel's erroneous resolution of this question of exceptional importance. *See* Fed. R. App. P. 35.

The panel relied exclusively on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), in which the Court held that the residual clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(ii), was void for vagueness. The panel committed three critical errors. First, in interpreting *Johnson*, the panel erroneously distilled that decision to two factors while ignoring other foundational elements of the Supreme Court's reasoning. Second, the panel failed to consider material distinctions between § 16(b) and the ACCA's residual clause. And third, the panel ignored the Supreme Court's broader vagueness doctrine, which requires that before a court may consider a facial vagueness challenge to a statute, it must examine the challenge on an as-applied basis.

1

## STATEMENT OF THE CASE

1.      Raul Vivas-Ceja is a citizen of Mexico who has been removed from the United States on three prior occasions.  Op. 2.  In September 2013, he was arrested at an airport in Madison, Wisconsin, and charged with illegally reentering the United States, in violation of 8 U.S.C. § 1326.  Op. 2-3.  That offense carries a maximum sentence of 20 years of imprisonment if the prior conviction was for an "aggravated felony," as that term is defined under federal immigration laws.  *See* 8 U.S.C. § 1326(b)(2).  As relevant here, the immigration laws define the term "aggravated felony" to include a conviction for a "crime of violence," 8 U.S.C. § 1101(a)(43)(F), which is separately defined to include a felony offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense,"  18 U.S.C. § 16(b).

Vivas-Ceja pleaded guilty to the illegal-reentry charge.  Op. 3.  The Presentence Investigation Report (PSR) calculated an advisory range of 18 to 24 months of imprisonment under the Sentencing Guidelines.  PSR ¶ 93.  The PSR started with a base offense level of 8 and added eight levels under U.S.S.G. § 2L1.2(b)(1)(C), because Vivas-Ceja had a prior conviction for vehicular flight in violation of Wisconsin law that qualified as a "crime of violence" under § 16(b), and thus as an "aggravated felony" under the immigration laws.  PSR ¶¶ 25-26.  The PSR similarly noted that, because Vivas-Ceja had been deported following conviction for an aggravated felony, the statutory maximum sentence was 20 years of imprisonment.  PSR ¶ 92.

Vivas-Ceja objected to the PSR's determination that his vehicular-flight conviction qualified as a crime of violence under § 16(b). He argued both that the offense did not satisfy the statute's terms and that § 16(b) was unconstitutionally vague for the same reasons that the residual clause of the ACCA[1] was being challenged as vague in *Johnson*, which was pending before the Supreme Court. *See* Op. 3-4.

The district court overruled the objection to the aggravated-felony classification and accompanying eight-level enhancement. *See* Op. 3-4. The court reasoned that the offense fell within § 16(b) because "vehicle flight from a law enforcement officer ordinarily results in a dangerous confrontation between the offender and the law enforcement officer and others, as well as creating a substantial risk that the perpetrator will intentionally use physical force to continue his attempt to elude capture." Sent. Tr. 4-5 (discussing *Sykes v. United States*, 131 S. Ct. 2267 (2011), and *United States v. Dismuke*, 593 F.3d 582 (7th Cir. 2010)). The court rejected Vivas-Ceja's request for a sentence of a year and a day, and instead imposed a sentence of 21 months of imprisonment with no additional term of supervised release. Sent. Tr. 7-12.[2]

---

[1] The ACCA defines the term "violent felony" as, *inter alia*, any felony that "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The emphasized portion of the statute is known as the "residual clause."

[2] According to the Bureau of Prisons, Vivas-Ceja is scheduled to be released from custody on March 7, 2016. *See* Federal Bureau of Prisons, Inmate Locator, *available at*: http://www.bop.gov/inmateloc/. Because Vivas-Ceja challenged only his term of imprisonment, the expiration of that term may render his challenge moot. *See Lane v.*

2.    This Court vacated Vivas-Ceja's sentence and remanded for resentencing. The panel held that "Section 16(b) is materially indistinguishable from the ACCA's residual clause," and, therefore, "it too is unconstitutionally vague according to the reasoning of *Johnson*." Op. 2.

The panel asserted that the Court's decision in *Johnson* was based on a holding that "two parts of the [ACCA] residual clause's categorical approach combine[d] to render the clause unconstitutionally vague." Op. 5. "The first part gives courts no guidance to determine what constitutes the 'ordinary case' of a crime." Op. 5 (citations omitted). "The second part leaves uncertainty about how much risk it takes before a court can conclude that the ordinary case of a crime is serious enough to be a violent felony." Op. 6 (citations and internal quotation marks omitted).

Turning its focus to § 16(b), the panel stated that the statute's "language, though not identical to the residual clause, is materially the same." Op. 6. Under the "first step" of its *Johnson*-based framework, the panel stated that the phrase "by its nature" in § 16(b) is "synonymous" with the term "otherwise involves conduct" contained in the ACCA's residual clause. Op. 6-7. It added that the Court's interpretation of § 16(b) in *Leocal v. Ashcroft*, 543 U.S. 1 (2004), under which courts are to "consider whether an offense would 'naturally involve a person acting in disregard of the risk that physical

---

*Williams*, 455 U.S. 624, 631 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot.").

force might be used against another,'" Op. 7 (quoting *Leocal*, 543 U.S. at 10), "is indistinguishable from *Johnson*'s interpretation of the residual clause." Op. 7. Under the "second step," the panel stated that § 16(b) "offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial,'" and that any difference between the phrase "substantial risk" in § 16(b), and "serious potential risk" in the residual clause, "is superficial." Op. 7.

The panel held that "*Johnson* concluded that the indeterminacy of both parts of the residual clause's categorical approach—the 'ordinary case' inquiry and the 'risk' inquiry—rendered the clause unconstitutionally vague," and that "[b]ecause § 16(b) requires the identical indeterminate two-step approach, it too is unconstitutionally vague." Op. 7.

In so concluding, the panel rejected the government's arguments that § 16(b) is distinguishable from the ACCA's residual clause because: (1) it is not preceded by the confusing list of enumerated offenses (burglary, arson, extortion, or use of explosives) that the Supreme Court had found to contribute to the ACCA's indeterminacy; and (2) it had not engendered "pervasive disagreement" among lower courts, as had the ACCA's residual clause. Op. 7-8 (quoting *Johnson*, 135 S. Ct. at 2560). On the first point, the panel dismissed *Johnson*'s discussion of "the confusion created by the list of enumerated crimes" as beyond "the heart of the Court's opinion" because "[t]he list itself wasn't one of the 'two features' that combined to make the clause unconstitutionally vague." Op. 8 (citation omitted). On the second point, while

acknowledging that § 16(b), unlike the residual clause, "hasn't produced a shifting and irreconcilable body of caselaw," the panel reasoned that "[t]he chaotic state of the caselaw was not a necessary condition to the Court's vagueness determination," but was merely "additional evidence that served to confirm [the residual clause's] hopeless indeterminacy." *Ibid.* (internal quotation marks and citation omitted).

## REASONS FOR GRANTING THE PETITION

En banc rehearing is warranted because this proceeding "involves a question of exceptional importance." Fed. R. App. P. 35(a)(2) and (b)(1)(B). The judgment that an Act of Congress of broad applicability is unconstitutional plainly satisfies that standard. The panel's ruling that § 16(b) is unconstitutionally vague is incorrect and will hinder the ability of prosecutors to protect the public from violent crimes by narrowing the scope of several important federal criminal statutes.

The panel failed to take into account the multiple factors that influenced the *Johnson* decision, as well as the many ways that § 16(b) is materially different from the ACCA provision at issue in *Johnson*. The panel's streamlined vagueness analysis is also at odds with decisions of this Court and the Supreme Court that require an as-applied challenge before a court may consider whether a statute is unconstitutional on its face.

**A.    *Johnson* Did Not Render Section 16(b) Unconstitutionally Vague.**

1.    The panel reduced *Johnson*'s analysis to two factors: the presence of the "ordinary case" methodology and uncertainty in measuring the degree of risk, which were discussed in the beginning of Part II.A of the Court's decision. *See* 135 S. Ct. at

2557-58.  However, a mere two-step inquiry renders much of the rest of the *Johnson* Court's decision unnecessary.  The following considerations were also critical to the Court's ultimate conclusion: the Court's own "failure of persistent efforts to establish a standard" for applying the residual clause, *id.* at 2558 (citation, internal quotation marks, and alteration omitted); the fact that the "clause has created numerous splits among the lower federal courts, where it has proved nearly impossible to apply consistently," *id.* at 2560 (citation and internal quotation marks omitted); and the fact that the clause "links a phrase such as 'substantial risk' to a confusing list of examples," *id.* at 2561.

The *Johnson* Court's attention to these factors was not mere surplusage or dicta.  The panel's two-step approach ignored the Court's careful statement that at least *five* independent uncertainties *combined* to render the ACCA's residual clause vague.  *See Johnson*, 135 S. Ct. at 2560 ("*Each* of the uncertainties in the residual clause may be tolerable in isolation, but '*their sum* makes a task for us which at best could be only guesswork.'" (emphasis added and citation omitted)).  The panel's failure to discern this crucial aspect of *Johnson* infected the panel's entire analysis.

2.     Section 16(b), unlike the ACCA, does not contain a confusing list of enumerated offenses; it has been limited to a narrow risk of force occurring during the commission of the offense; and it has not been the subject of continued confusion and failed attempts at construction by the Supreme Court and other courts.  *See* Gov't Br. 25-34.  The panel failed to give due consideration to these points of distinction.

i.     The panel brushed aside the fact that § 16(b) does not have a confusing

7

list of exemplar crimes like the one that precedes the ACCA's residual clause.  *See* Op. 7-8.  Yet, the difficulties posed by the ACCA's enumerated list were more than a passing consideration in *Johnson*; they pervaded the Court's analysis.  *See Johnson*, 135 S. Ct. at 2557 ("the inclusion of burglary and extortion among the enumerated offenses preceding the residual clause confirms that the court's task also goes beyond evaluating the chances that the physical acts that make up the crime will injure someone"); *id.* at 2558 ("the residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes," which are "far from clear in respect to the degree of risk each poses" (citation omitted)); *id.* at 2559 (common sense, as applied in three prior Supreme Court ACCA cases, could not produce a consistent conception of the degree of risk for the four enumerated crimes or for unenumerated crimes); *id.* at 2559 (inclusion of burglary and extortion among the enumerated offenses posed additional problem of suggesting that a crime may qualify "even if the physical injury is remote from the criminal act" without indicating "how remote is too remote"); *id.* at 2561 (rejecting argument that striking down the ACCA residual clause would affect similar statutes because "[a]lmost none of the cited laws links a phrase such as 'substantial risk' to a confusing list of examples").  The absence of a similar confusing list of offenses in § 16(b) significantly distinguishes it from the ACCA and undercuts the panel's analysis.

      ii.    The panel held that both the ACCA's residual clause and § 16(b) require the same "ordinary case" inquiry. Op. 7.  However, absent from § 16(b) is the necessity for courts to go "beyond evaluating the chances that the physical acts that make up the

crime will injure someone" and to evaluate the risk for injury even "*after*" completion of the offense. *Johnson*, 135 S. Ct. at 2557. The consideration of post-offense conduct was an important part of the ACCA's "indetermina[te]" "wide-ranging inquiry." *Ibid.*

In contrast, § 16(b) is significantly narrower. The panel incorrectly stated that "*Leocal*'s interpretation of § 16(b) is indistinguishable from *Johnson*'s interpretation of the residual clause." Op. 7. Unlike the residual clause, § 16(b) applies only when the risk of force occurs "'in the course of committing the offense.'" *Leocal*, 543 U.S. at 10 & n.7 (quoting § 16(b)). Further, § 16(b) looks at the risk of the "use of force" rather than the much broader "risk of injury." *See Leocal*, 543 U.S. at 10 n.7 (observing that "§ 16(b) plainly does not encompass all offenses which create a 'substantial risk' that injury will result from a person's conduct"). The focus on the "use of force" limits the statute's reach and avoids the kind of speculation about extra-offense conduct that *Johnson* denounced. *See Johnson*, 135 S. Ct. at 2557, 2559; *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009) (emphasizing "the textual difference between § 16(b) and" the ACCA's residual clause, and explaining that "for an offense to qualify as a § 16(b) crime of violence, the risk of force must arise in the course of *committing* the crime and not merely as a *possible result*").

iii.     The panel appeared to agree with the government that "Section 16(b) * * * hasn't produced a shifting and irreconcilable body of caselaw." Op. 8. However, the panel dismissed this critical part of *Johnson*'s analysis, asserting that "[t]he chaotic state of the caselaw was not a necessary condition to the Court's vagueness determination."

*Ibid.* This, too, is incorrect. The Supreme Court dedicated a significant portion of its analysis to its own "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause," *Johnson*, 135 S. Ct. at 2558, as well as the corresponding failures of the lower courts, *id.* at 2560. *See id.* at 2559 (noting *Johnson* is the Court's "fifth [case] about the meaning of the residual clause"). The Court concluded that "[n]ine years' experience trying to derive meaning from the residual clause convinces us that we have embarked upon a failed enterprise." *Id.* at 2560.

As the panel acknowledged, § 16(b) has not produced "hopeless indeterminacy," *id.* at 2558. Indeed, the opposite is true. The Supreme Court has rendered only one significant § 16(b) decision, which occurred over ten years ago and led to a *unanimous* decision that adopted an interpretive framework for offenses under the statute. *See Leocal*, 543 U.S. at 4, 10. The Court's analysis (which was joined by Justice Scalia, the author of *Johnson* and the principal critic of the ACCA's vagueness leading up to *Johnson*) belies any claim that § 16(b) is too uncertain to be readily applied and to permit evenhanded application.

3.     Despite *Leocal* and its progeny, the panel held that § 16(b) was unconstitutionally vague on its face. The panel did not consider the government's argument that before a court may consider a facial vagueness challenge to a statute, it "must examine the vagueness challenge 'on an as-applied' basis." Gov't Br. 17 (quoting *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988)). As such, the panel's decision runs counter to *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), in which

the Supreme Court reversed this Court after it had found a local ordinance void for vagueness on its face. *Id.* at 494, 505. The Supreme Court found that this Court had erred because it only "determined that the ordinance is void for vagueness because it is unclear in *some* of its applications to the conduct of [appellee] and of other hypothetical parties." *Id.* at 495. The panel repeats this error here.

The Court in *Johnson* did reject the view that a provision cannot be facially vague merely because there is "some conduct that clearly falls within the provision's grasp." 135 S. Ct. at 2561. But the Court did not hold that any possibility of a vague application requires finding a statute void. Rather, it concluded that the residual clause was void because it is "a 'judicial morass that defies systemic solution,' 'a black hole of confusion and uncertainty' that frustrates any effort to impart 'some sense of order and direction.'" *Id.* at 2562 (citation omitted). But "there are [other] statutes that by their terms or as authoritatively construed apply without question to certain activities, but whose application to other behavior is uncertain." *Smith v. Goguen*, 415 U.S. 566, 577-78 (1974).

For those statutes, the general rule is that a vagueness challenge is not available to one who violates the "hard core" of the statute. *Smith*, 415 U.S. at 577-78 (hyphen omitted). Facial vagueness challenges should therefore be reserved for statutes that "simply ha[ve] no core," "in the sense that no standard of conduct is specified at all." *Ibid.* (citation and quotation marks omitted). That is not the case with respect to § 16(b), where the Supreme Court has already identified an offense that clearly falls within the provision. *See, e.g., Leocal*, 543 U.S. at 10 (identifying burglary as the "classic example"

11

of a crime of violence). "The strong presumptive validity that attaches to an Act of Congress has led th[e] Court to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). The panel's rush to find § 16(b) facially unconstitutional runs counter to these principles.

**B.    The Panel's Contrary Conclusion Warrants En Banc Review.**

The *Johnson* Court's careful, multilayered analysis reflected a desire to cabin the decision to the residual clause of the ACCA. The Court downplayed the concerns of the government and the dissent that "dozens of federal and state criminal laws use terms like 'substantial risk,' 'grave risk,' and 'unreasonable risk,' suggesting that to hold the residual clause unconstitutional is to place these provisions in constitutional doubt." *Johnson*, 135 S. Ct. at 2561; *cf. id.* at 2577 (Alito, J., dissenting) (noting "scores of federal and state laws that employ similar standards" to the residual clause and stating that "[i]f all of these laws are unconstitutionally vague, today's decision is not a blast from a sawed-off shotgun; it is a nuclear explosion"). "Not at all," the Court advised. *Id.* at 2561. "The Supreme Court will be surprised to learn that its opinion in *Johnson* rendered § 16(b) unconstitutionally vague, particularly as its opinion did not even mention *Leocal* and specifically concluded with the statement limiting its potential scope." *Dimaya v. Lynch*, 803 F.3d 1110, 1129 (9th Cir. 2015) (Callahan, J., dissenting).

Although there is currently no circuit conflict on the question whether § 16(b) is

12

unconstitutional,[3] the viability of the statute is an issue of exceptional importance. Section 16(b) is incorporated into numerous other federal provisions, including those that apply immigration laws against criminal aliens, and the text of § 16(b) is contained in dozens of federal and state criminal statutes.[4] Thus, while the *Johnson* Court believed that striking the ACCA's residual clause would have little effect on other risk-based statutes, 135 S. Ct. at 2561, a decision striking § 16(b) would significantly impact other federal and state laws.

The panel's decision has already spread beyond § 16(b) to affect criminal cases

---

[3] In *Dimaya v. Lynch*, a divided panel of the Ninth Circuit held in the civil-removal context that § 16(b) is unconstitutionally vague because it suffers from the same indeterminacy as the ACCA's residual clause. 803 F.3d at 1111. The government filed a petition for rehearing en banc, which the court denied on January 25, 2016.

[4] *See, e.g.*, 8 U.S.C. § 1101(a)(43)(F) (defining the term "aggravated felony" under the immigration laws); 18 U.S.C. § 25 (use of minor in crime of violence); 18 U.S.C. § 119 (protection of individuals performing official duties); 18 U.S.C. § 521(d)(3)(C) (enhanced sentence for criminal gang member); 18 U.S.C. § 842(p)(2) (disseminating information regarding explosives or weapons of mass destruction with intent that they be used in crime of violence); 18 U.S.C. § 844(o) (transferring explosives to be used in crime of violence); 18 U.S.C. § 924(c)(3)(B) (using, carrying, or possessing firearm in crime of violence); 18 U.S.C. § 929 (committing crime of violence while possessing armor-piercing ammunition); 18 U.S.C. § 931 (possession of body armor by someone convicted of crime of violence); 18 U.S.C. § 1028(b)(3)(B) (committing identification fraud in connection with crime of violence); 18 U.S.C. § 1952 (traveling or using mail with intent to commit crime of violence); 18 U.S.C. § 1959 (attempting, conspiring, or threatening to commit crime of violence in connection with racketeering); 18 U.S.C. § 2261 (traveling to commit crime of violence against spouse); 18 U.S.C. § 3142(f)(1)(A) and (g)(1) (bail statute); 18 U.S.C. § 3181 (extradition of person who committed crime of violence in foreign country against U.S. national); 18 U.S.C. § 3663A(c)(1)(A) (mandatory restitution); 18 U.S.C. § 5032 (juvenile-transfer statute); R.I. Gen. Laws 1956, § 21-28-4.07.2(a) (distributing controlled substance with intent to commit crime of violence); Utah Code Ann. § 76-9-802(5)(b)(i) (defining "gang crime").

that are currently being adjudicated in this Circuit. Notably, that includes cases in which a defendant has been charged with violating 18 U.S.C. § 924(c), which makes it unlawful, *inter alia*, to use or carry a firearm during and in relation to a "crime of violence," or to possess a firearm in furtherance of such a crime. *See, e.g.*, *United States v. Crawford*, No. 3:15CR70, 2016 WL 320116, at *1 (N.D. Ind. Jan. 27, 2016) (observing that § 924(c)(3)(B) "is identical" to § 16(b) and, therefore, based on the panel's opinion, "an offense can only constitute a crime of violence under" the elements-based test of § 924(c)(3)(A)).[5] Section 924(c) is a critical tool used to prosecute serious crimes in which the presence of a firearm significantly heightens the danger of the offense. To take just one example, prior to the panel's decision, a district court rejected a vagueness challenge to § 924(c)(3)(B) in a case in which a defendant was convicted of possessing a firearm in furtherance of sex trafficking of a minor. *United States v. Jackson*, No. 3:15CR6, Op. & Order 11-18 (N.D. Ind. Dec. 2, 2015) (denying motion for judgment of acquittal). The defendant has filed a notice of appeal in that case. *See* Notice of Appeal, *Jackson*, *supra*.

In addition, many aspects of criminal cases that arise every day in courtrooms within this Circuit rely on the ubiquitous definition of "crime of violence" contained in

---

[5] In *United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015), the Fourth Circuit declined to address whether *Johnson* affected § 924(c)(3)(B). 805 F.3d at 499 n.5. It noted, however, that the *Johnson* "Court had not occasion to review" § 924(c)(3)(B), and observed that § 924(c)(3)(B) and the ACCA's residual clause "are similarly worded but not identically so." *Fuertes*, 805 F.3d at 499 n.5.

§ 16(b).  Two important examples are statutes that set parameters for bail and the transfer of juvenile defendants.  *See, e.g.*, *United States v. Rogers*, No. 14CR234, Order 11-12 (E.D. Wis. Jan. 12, 2016) (requesting additional briefing on whether *Johnson* affects the federal juvenile-transfer statute, 18 U.S.C. § 5032); *see also United Sates v. Green*, No. 15CR526, 2016 WL 277982, at *4 (D. Md. Jan. 22, 2016) (noting that federal bail statute, 18 U.S.C. § 3142(f)(1)(A) and (g)(1), "closely resembles" § 16(b) and § 924(c)(3)(B), and that extending *Johnson* to them "would be a dramatic step, paving the way for courts to invalidate a number of other similarly constructed federal and state laws").  These statutes and many others will be adversely affected if this Court does not correct the panel's decision.

## CONCLUSION

This Court should grant the government's request for en banc rehearing.

Respectfully submitted,

**JOHN W. VAUDREUIL**
**United States Attorney**
**Western District of Wisconsin**

**PETER M. JAROSZ**
**Assistant United States Attorney**
**Western District of Wisconsin**

**LESLIE R. CALDWELL**
**Assistant Attorney General**

**SUNG-HEE SUH**
**Deputy Assistant Attorney General**

**s/ John P. Taddei**
**JOHN P. TADDEI**
**Criminal Division, Appellate Section**
**U.S. Department of Justice**
**950 Pennsylvania Ave., NW, Ste. 1712**
**Washington, DC 20530**
**(202) 532-4475**
**john.taddei@usdoj.gov**

15

## CERTIFICATE OF SERVICE

In accordance with Fed. R. App. P. 25(d), the undersigned counsel of record certifies that the foregoing Petition for Rehearing En Banc was this day served via notice of electronic filing with the Seventh Circuit CM/ECF on counsel for Appellee:

> Joseph A. Bugni
> Federal Defender Services of Wisconsin, Inc.
> 22 East Mifflin Street, Ste. 1000
> Madison, WI 53703
> (608) 260-9900
> Joseph_bugni@fd.org

**DATED:**     **FEBRUARY 4, 2016**

s/ John P. Taddei

JOHN P. TADDEI

# CERTIFICATE OF COMPLIANCE

1. This petition complies with the page limitations of Fed. R. App. P. 35(b) because it does not exceed 15 pages, excluding the parts of the petition exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This petition complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in Garamond 14-point font in text and Garamond 14-point font in footnotes.

3. The digital version electronically filed with the Court on this day is an exact copy of the written document to be sent to the Clerk.

4. This brief has been scanned for viruses with the most recent version of McAfee VirusScan Enterprise, version 8.7.0i, which is continuously updated, and according to that program is free of viruses.

DATED:     FEBRUARY 4, 2016

s/ John P. Taddei
JOHN P. TADDEI